**EXHIBIT A**

Email from Lt. Eric Taylor to Brittney Geurin (09/26/2023) restricting public record access

 **City of Hamilton**
BUTLER COUNTY OHIO

**Brittney Geurin <brittney.geurin@hamilton-oh.gov>**

## FOIA request for case 23-009360

3 messages

**Eric Taylor** <eric.taylor@hamilton-oh.gov>                        Tue, Sep 26, 2023 at 2:43 AM
To: Brittney Geurin <brittney.geurin@hamilton-oh.gov>

Brittney, please to not release any BWC videos , L3 videos or anything related to this on going criminal investigation/
prosecution of this case . Anything considered evidence has to be requested via the discovery process through the
Prosecutor's office. In this case that request has to be sent  to the city prosecutor . Please compile what you can but do
not release anything until it has been reviewed by me . I don't want people trying to go around the discovery process in an
on going prosecution case. If you have any questions please let me know . Thank you .

**Brittney Geurin** <brittney.geurin@hamilton-oh.gov>                  Tue, Sep 26, 2023 at 8:09 AM
To: Eric Taylor <eric.taylor@hamilton-oh.gov>

Lt. Taylor,

Received. The only record provided was the arrest/incident report. The video was not released and the requestor is aware
that this is an open case and he would have to go through the discovery process. I will continue to work on the request
and will follow up with you on the status and the records I will need help obtaining, if available.

Thank you,
Brittney

Brittney Geurin
Police Records Supervisor
Hamilton Police Department
331 S. Front Street
Hamilton, Ohio 45011
(513) 868-5811 ext. 1025

[Quoted text hidden]

**Eric Taylor** <eric.taylor@hamilton-oh.gov>                        Tue, Sep 26, 2023 at 10:34 AM
To: Brittney Geurin <brittney.geurin@hamilton-oh.gov>

Awesome , thank you. I spoke with him yesterday and he stated he going want a whole bunch of stuff. He basically told
me that he knows the arrest was  justified but he is a man on a mission in search of a policy violation by PO Crowthers .
Which policy you may ask ? He doesn't know but there must be one according to him.
[Quoted text hidden]

**EXHIBIT B**

Communications from Brittney Geurin reflecting denial of records

 **City of Hamilton**
BUTLER COUNTY OHIO

**Brittney Geurin <brittney.geurin@hamilton-oh.gov>**

## FOIA request for case 23-009360
3 messages

---

**Eric Taylor** <eric.taylor@hamilton-oh.gov>                                       Tue, Sep 26, 2023 at 2:43 AM
To: Brittney Geurin <brittney.geurin@hamilton-oh.gov>

Brittney, please to not release any BWC videos , L3 videos or anything related to this on going criminal investigation/
prosecution of this case . Anything considered evidence has to be requested via the discovery process through the
Prosecutor's office. In this case that request has to be sent to the city prosecutor . Please compile what you can but do
not release anything until it has been reviewed by me . I don't want people trying to go around the discovery process in an
on going prosecution case. If you have any questions please let me know . Thank you .

---

**Brittney Geurin** <brittney.geurin@hamilton-oh.gov>                               Tue, Sep 26, 2023 at 8:09 AM
To: Eric Taylor <eric.taylor@hamilton-oh.gov>

Lt. Taylor,

Received. The only record provided was the arrest/incident report. The video was not released and the requestor is aware
that this is an open case and he would have to go through the discovery process. I will continue to work on the request
and will follow up with you on the status and the records I will need help obtaining, if available.

Thank you,
Brittney

Brittney Geurin
Police Records Supervisor
Hamilton Police Department
331 S. Front Street
Hamilton, Ohio 45011
(513) 868-5811 ext. 1025

[Quoted text hidden]

---

**Eric Taylor** <eric.taylor@hamilton-oh.gov>                                       Tue, Sep 26, 2023 at 10:34 AM
To: Brittney Geurin <brittney.geurin@hamilton-oh.gov>

Awesome , thank you. I spoke with him yesterday and he stated he going want a whole bunch of stuff. He basically told
me that he knows the arrest was justified but he is a man on a mission in search of a policy violation by PO Crowthers .
Which policy you may ask ? He doesn't know but there must be one according to him.
[Quoted text hidden]

**EXHIBIT C**

City of Hamilton Sunshine Law Policy document

# HAMILTON PUBLIC RECORDS RELEASE POLICY

Openness leads to a better informed citizenry, which leads to better government and better public policy. It is the mission and intent of the City of Hamilton to at all times fully comply with and abide by both the spirit and the letter of Ohio's Public Records Act.

A "record" is defined to include the following: A document in any format – paper or electronic – that is created, received by, or comes under the jurisdiction of the City of Hamilton that documents the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

A "public record" is a "record" that is being kept by this office at the time a public records request is made, subject to applicable exemptions from disclosure under Ohio or federal law. All public records must be organized and maintained in such a way that they can be made available for inspection and copying.

Public records are available for inspection during regular business hours. Public records must be made available for inspection promptly. Copies of public records must be made available within a reasonable period of time. "Prompt" and "reasonable" take into account the volume of records requested, the proximity of the location where the records are stored, the necessity for any legal review and redaction, and other facts and circumstances of the records requested.

No specific language is required to make a request for public records. However, the Requester must at least identify the records requested with sufficient clarity to allow the office to identify, retrieve, and review the records.

The Requester does not have to put a public records request in writing, and does not have to provide his or her identity or the intended use of the requested public record(s).

In processing the request, the City does not have an obligation to create new records or perform a search or research for information in the office's records. An electronic record is deemed to exist so long as a computer is already programmed to produce the record through the City's standard use of sorting, filtering, or querying features.

In processing a request for inspection of a public record, a City employee may be required to accompany the Requester during inspection to make certain original records are not taken or altered.

If the Requester makes an ambiguous or overly broad request or has difficulty in making a request such that the City cannot reasonably identify what public records are being requested, the request may be denied, but the City will then provide the Requester an opportunity to revise the request by informing the Requester of the manner in which records are maintained and accessed by the City.

If the City withholds, redacts, or otherwise denies requested records, the City will provide an explanation, including legal authority, for the denial(s). If the initial request was made in writing, the explanation will also be in writing. If portions of a record are public and portions are exempt, the exempt portions may be redacted and the rest will be released. When making public records available for public inspection or copying, the City shall notify the Requester of any redaction or make the redaction plainly visible.

Charges for postage and/or copies are limited to the actual cost of postage and mailing supplies, or other actual costs of delivery and/or copying, if any. Cost of copying is $.05 per page for standard copies. A Requester may be required to pay in advance for the actual costs involved in providing the copy. The Requester may choose whether to have the record duplicated upon paper, upon the same medium on which the public record is kept, or upon any other medium on which the office determines that the record can reasonably be duplicated as an integral part of the office's normal operations.

**EXHIBIT D**

Transcript or summary of threatening phone call made by Major Brian Tinch

**EXHIBIT E**

Email from Barry Riley confirming conversation with Scott Scrimizzi

CR

Chief Deputy Barry K.... 1/3/25

Re: 899 to 800

He did call and gave me a synopsis of the problem. I cannot provide you details on what he asked for if anything.

To be completely fair, I could have volunteered to call you and see if we could help calm the situation down in hopes of avoiding any criminal charges against you.

To say he asked me to do this, I cannot confidently say that is exactly how it went.

mad ape that helps.

**EXHIBIT F**

Letter from Frost Brown Todd LLC threatening Plaintiff



**Frost**
**Brown Tod**
ATTORN

**Scott D. Phil**
Par
513.870.820
513.870.099
sphillips@fbtlaw.

August 23, 2024

**<u>CERTIFIED MAIL and EMAIL</u>**



The undersigned is legal counsel to the City of Hamilton.  If you are represented, please forward this letter to your lawyer.

For some time now you have posted on social media and the City's website disparaging images that are false, vile and libelous. In addition you have repeatedly called City employees for the exclusive purpose of harassing, intimidating and expressing libelous communication.

This activity must stop. The City recognizes that you have certain First Amendment rights to express yourself.  However, you have crossed the line by communicating in a manner that is clearly designed to harass and intimidate.  This type of activity is not only counter to the First Amendment but is actionable both as civil causes of action and criminal charges.

From this point forward, any communication from you to the City for non-emergency issues must be made in writing to Assistant Law Director Brian Harrison. (Any serious emergency communication can be made by calling 911). His email address is brian.harrison@hamilton-oh.gov. All other city employees have been directed to cease communicating with you.  If you continue to call City employees other than Mr. Harrison, the City will deem this conduct telephone harassment and will pursue criminal charges. If you continue to post vile and disgusting images of City employees or representatives those individuals may pursue libel claims in Butler County Court of Common Pleas.

The City has been extremely patient with your boorish and unprofessional conduct.  If it continues the City intends to pursue each and every legal means available to bring this unacceptable behavior to an end.

**EXHIBIT G**

Video footage from January 2025 showing officers refusing to speak with Plaintiff

**EXHIBIT H**

Statement and supporting documentation of emotional distress

**EXHIBIT I**

Plaintiff Complaint and Hamilton Police Department Response

26/01/2024, 10:16      City of Hamilton, Ohio Mail - Re: Message from "RNP002673EC6A3D"



Trent Chenoweth <trent.chenoweth@hamilton-oh.gov>

---

## Re: Message from "RNP002673EC6A3D"
1 message

---

**Trent Chenoweth** <trent.chenoweth@hamilton-oh.gov>             Fri, Nov 3, 2023 at 3:20 PM
To: Jeff Pyfrin <jpyfrin@hotmail.com>
Cc: Scott Scrimizzi <scott.scrimizzi@hamilton-oh.gov>

Mr. Pyfrin,

In reference to your complaint packet that was submitted on 11-1-23, please see below for my conclusions on the matter:

1) The complaint packet you submitted electronically was forwarded to Executive Director J. Scott Scrimizzi on 11-1-23 for follow up on the portion involving himself and Chief Craig Bucheit.

2) Various sections of your complaint reference an ongoing criminal case that you are not a party to nor have any involvement in. That will have to be adjudicated through the court system.

3) In reference to your complaint on Lt. Taylor, Sgt. Thacker, and Supervisor Geurin, I have determined it to be unfounded.

In recent weeks, you have requested a voluminous amount of documents and videos. We are working diligently to provide that information to you. Specifically, you have submitted a total of 33 requests. We have fulfilled 27 of those requests with 6 still pending or partially completed. Those numbers are not inclusive of the additional request you submitted on 10-30-23.

Capt. Chenoweth

On Wed, Nov 1, 2023 at 1:13 PM Jeff Pyfrin <jpyfrin@hotmail.com> wrote:

# I would like to file a formal complaint on the City of Hamilton Police Department, the Chief of Police, Lieutenant Eric Taylor, Sergeant Mike Thacker, Brittnay Geurin Records Supervisor and Scott Scrimizzi Executive Director of Public Safety for their personal involvement and actions in the following incident concerning Public Information Rights, Civil Rights, and several violations of policy of the Hamilton Police Department. Attached is a list of the policies and procedures I feel were violated by the police department, its

# employees, and city employee. Also, supporting documents for the validity of my complaint. As well as an article published by the Journal-News on 01/20/22 by Lauren Pack.

On 09/11/23 I entered the City of Hamilton Police Department, during regular operating business hours, in order to file a Public Information Request. I was initially informed at the records information window that this needed to be done online in an email. I informed the employee I had came to the police department in person to file my request. I was then asked if I had the information I wanted written down and after I informed the employee it was written down. I was instructed to take a seat and wait. After being called to the window the employee asked me for the information I wanted. I then began to recite the information I had written down on my cellular phone to request. The employee informed me again I had to write down my request on paper. The employee was then informed I was not writing anything down. Then the employee began writing down my request as I recited them to her.

Once I asked for dash camera and body camera footage again it was insisted that I fill out paperwork to be able to view this information. Again, I informed the employee I was not filling out anything, asked if she wanted to see the City of Hamilton Policy on the matter, and asked to speak to her supervisor. At this time the employee turned her back to me, she threw her hands in the air, and stated " I'm not doing this today". I assume she went to find the supervisor. Once the supervisor was informed of what had happened she informed me I did not have to fill out any paperwork. I then asked if I would be finishing my request with her or the employee who was clearly agitated. The supervisor informed me I could continue my request with the clearly agitated employee.

This employee asked me to stop yelling several times and informed her I was not yelling, but rather it was difficult for me to hear her and I wanted to make sure she was understanding and hearing me due to my difficulty in hearing her through the glass, small window hole, and small paper slide at the bottom of the window. The only person causing any attention was the clearly agitated employee taking my request. After all my items were communicated the employee repeated them to me and they were correct. I left a contact number to be reached when the records were ready. I also asked if I needed to leave a deposit for any records. I asked if she may know how long it would take to obtain my records requested. This employee told me it would take a while due to some of the records request having to go to a different location in order to be obtained and redacted. Such as personnel files and prior disciplinary records. She informed me the rest in my information could be ready by the following week. She then recanted this statement and told me she did not know when my request would be ready. I then thanked her for her time and left the police station. The only information I was provided was an incident report with no statement of facts listed nothing else in my request for viewing was allowed to me this day.

The following day on 09/12/23 I received a message to contact Lt. Taylor of the City of Hamilton Police Department. Upon returning Lt. Taylor's phone call. He informed me he received my records request and anytime there is a records request of my length and nature it gets forwarded to the chief due to having concerns it may be media related. I then informed Lt. Taylor I was not the media and he did not have worry about that, however I was disabled former law enforcement officer.

I was able to communicate my concerns of what I had heard about an incident occurring at the Hamilton Police Department. I informed Lt. Taylor I wanted to see what had happened due to concern the shared with me being so unbelievable due to my past of being a Law Enforcement Officer.

Lt. Taylor told me this information seemed odd to him as well. Lt. Taylor told me he was going to look into the matter and get back with me in regards to my concern. I also asked about the information I had inquired about and was told it was being worked on and would take time. I thanked him and stating again I just wanted the information to be able to see what happened. I also informed Lt. Taylor during this conversation that once I had seen all the information I requested I hoped I could say the officer did an outstanding job. Lt. Taylor was also told in this conversation. The issues between the officer and citizen could be handled in court. I just wanted to see the information. I reiterated to Lt. Taylor during this conversation. I had hoped once I see all the information I could say the Hamilton Police Department did a great job. He then thanked me and told me he hoped so as well.

Upon a follow up phone call placed by Lt. Taylor on 09/14/23. When I returned Lt. Taylor's phone call. He had informed me he had watched the dash camera footage which I had request  and the circumstances leading to

City of Hamilton, Ohio Mail - Re: Message from "RNP002673EC6A3D"

incident. During this phone conversation Lt. Taylor informed me this incident would have gone much differently if he was the officer involved in the incident.

Lt. Taylor told me the difference in the incident happening the way it did, and the incident not happening was the difference between an officer with 24 years experience as opposed to an officer with 2 years of experience. Insinuating the lack of experience and knowledge of the officer which lead to the incident, and someone with more experienced and training would know to use more common sense and much better judgment.

I explained to Lt. Taylor I could understand the difference in a more tenured experience officer of 24 years like Lt. Taylor and an officer who has only been with department for 2 years. I informed Lt. Taylor again they could talk about legal issues in court again and that I just wanted to talk about policies and see the information I had requested. I reiterated this point several times in our conversations.

I even told Lt. Taylor, I myself I would "profile" the vehicle in the incident and anyone with any sense would. We then had a conversation on how police can not say "profiling" anymore. Lt. Taylor told me it was now called "behavioral profiling" and the Hamilton Police Department conducts this practice in law enforcement all the time, that's its good policing, and that he encourages officers to practice this as a means of good police work. I then told him whatever it's it's called now it's still "profiling" and I was surprised it was aloud now in police work.

Lt. Taylor was informed there was no doubt both the officer and individual were both wrong on the day incident took place. However, the officer has been trained and the citizen he dealt with was not trained. Therefore, the officer should have known better making the officer "more wrong due to being trained". I asked if I could have a copy of the dash camera footage and body camera footage so I may see it for myself. I told Lt. Taylor I was sure I could view it through discovery with the court, so whether I viewed the footage sooner or later I was going to see the footage requested.

Lt. Taylor said he would allow me to see dash camera footage due to my past experience with law enforcement. I informed Lt. Taylor I would be in Hamilton on 09/22/23 and I could meet him on that date. Lt. Taylor told me he was off that day and he would inform Sgt. Thacker of the City of Hamilton Police Department of the incident because he could be trusted and I could meet with him. Lt. Taylor and I agreed to a 15:30HRS to meeting time with Sgt. Thacker as to not interfere with roll call or beginning of watch activities.

Lt. Taylor was also asked if I could pick up any further documents on 09/22/23. I informed Lt. Taylor I was looking forward to reading the General Orders and Policies because they were just copies and shouldn't be hard to obtain as I used to keep a binder with them in my cruiser when I was with law enforcement. I informed Lt. Taylor I was going be unable to do anything due to an upcoming surgery and looked forwarded to reading them and learning more about the the department because I was interested in those things. Lt. Taylor said he would do all he could for me and have any further documentation available to me on 09/22/23 when I met with Sgt. Thacker.

When I met with Sgt. Thacker to view the dash camera footage on 09/22/23 at the City of Hamilton Police Department. I was taken to the formal meeting room to view the tape on the projection monitor. Sgt. Thacker explained the readout in the dash camera screen and informed him I was an ex law enforcement officer and knew how the read the screen. While watching the screen I asked about there being no sound along with dash camera footage we were watching. Sgt. Thacker told me the microphone inside the car does not automatically come on when the light bar is activated and he did not understand why the sound was not working either. Sgt. Thacker did appear to try and fix the issue with the equipment. However, when the officer excited his vehicle you could hear his commands on the microphone on the dash camera.

I would like to note. The sound for the dash camera footage did not work on my personal computer either. However, in the copies of this footage I've made and given to others. They all say the sound works on their copies, so it's hard to determine exactly where the error lie in this.

While watching the video with Sgt. Thacker I found the footage of the officers investigation and subsequent arrest to be so unsettling, atrocious, and egregious. After the person was placed in handcuffs I told Sgt. Thacker I could watch the rest camera footage at my house.

I also informed Sgt. Thacker the incident could have gone differently and he obviously disagreed. Finding no wrongdoing as to what was seen in the dash camera up to the point I requested him to stop playing the footage. I did

not know if this disagreement was due to Sgt. Thacker's lack of experience also or his overbearing, dominant, and pious attitude he demonstrated during our meeting.

Due to my previous conversation with Lt. Taylor in reference to the inexperience of officers at the Hamilton Policed Department. I could clearly see and understand by watching the video. The officer in the dash camera clearly lacked knowledge, experience, training, and I'm actually shocked he still has a job with the City of Hamilton due to being a liability for the department. I'm very certain if I would have performed as this officer conducted himself and it was brought to the attention of my supervisor I would have been fired regardless if it was my second year or my twenty fourth year with the department. However, my issue is with the Public Information Request I've requested.

I informed Sgt. Thacker during this meeting, as I did with Lt. Taylor, that I did not want to talk about the law the citizen could argue the facts in court. I just wanted to talk about the policies and procedures of the department regarding this officers conduct.

I did ask Sgt. Thacker if the officer was found to have violated any policies would if he would be held to the same standards he measured the citizen to that day. Sgt. Thacker agreed with me that if the officer was found to violate any policy he would be held to the same standards as he measured unto the citizen.

Sgt. Thacker then provided the dash cam video, arrest report with complete narrative, and the booking report in a file for me to take with me. I asked again about the policy and general orders as Lt. Taylor and I had discussed on 09/14/23. I was informed by Sgt. Thacker that was all the information given to him by Lt. Taylor. I thanked him for his time, offered to pay the cost of the CD as is the policy of the City of Hamilton for digital information. Sgt. Thacker declined, and I told him I would follow up with Lt. Taylor when he returned to work. Sgt. Thacker's BWC footage is available for this. You can clearly see and hear what transpired.

I would like to note I requested this BWC footage as part of a Public Information request. You can clearly see the video Sgt. Thacker is watching on the computer is the same video I'm watching on the projector. I would further like to note the Hamilton Police Department Records Department censored the viewing of the dash camera playing on the computer while Sgt. Thacker and I were watching it on the projector. In order for me not the view the information I was clearly watching and was provided a certified copy. I was confuse as why this happened and came to logical conclusion either my rights or the citizens who was arrested were clearly violated. However, at this point I wasn't sure.

When Lt. Taylor return from days off on 09/24/23. I had the chance to discuss several discrepancies in the officers report and what exactly happened on the dash camera footage. One of which was an officer who was on scene and not listed in the report or any documentation of the incident.

I asked Lt. Taylor if he might know who the officer may be. I described the individual and Lt. Taylor asked me if the person had a beard or was clean shaven. I told him I could not remember but he his clearly on the dash camera footage I was provided. I then asked if the Officer was a New Miami Officer as I would have be in contact with the Village of New Miami for information.

Lt. Taylor advised me he was unaware if New Miami still had Police Officers. I found this odd at the time because I had not heard of New Miami Police Department disbanding. However, I had no reason why Lt. Taylor wouldn't know if the village of New Miami had Police Officers as it is a neighboring jurisdiction.

However, Lt. Taylor told me he did not know who it was I was describing and had he had to view the dash camera footage to find out. This is odd due to Lt. Taylor telling me he watched the video on or about 09/14/23. I'm sure he would been able identify one of his officer in camera footage if he would have seen him. It was very obvious if you watched the dash camera footage.

I told him I would appreciate him letting me who the officer was, because I was going to be making a Public Information request for the unknown officers BWC. In order to see exactly what happened. This was due to the statement of facts not matching the the horrific events seen on the dash camera footage, and lack of information documented or articulated by the arresting officer.

However, knowing BWC are supposed to be on and recording while on a call in public. I was hoping this unknown officers BWC might provide further insite on what took place during the incident. Lt. Taylor assured that one I had

"seen everything" I would totally understand the events which took place in this incident during this phone conversation also.

I would like to note due to Lt. Taylor's email thread on 09/26/23. I had not viewed or received any policy or procedures on this matter as of our conversation on 09/24/23 this was just general knowledge based on common sense.

I also had a discussion with Lt. Taylor, during this conversation, about the officer clearly committing the same traffic offenses he cited the citizen for leading to their arrest. I used the following analogy:

If I pull someone over for drinking a beer while they're driving. I wouldn't arrest the driver, put them in my back seat of my cruiser, then on the way to jail crack open a beer in the front seat, and drink it on the way to jail with them in back seat.

I explained to Lt. Taylor this was an extreme analogy, however he understood the meaning of the antidote. Lt. Taylor told me he would watch the tape again and see who the officer was because he did not know and then contact me the following day (09/25/23.) Before ending the call I asked Lt. Taylor explicitly "Are you my contact in this matter?" Lt. Taylor stated "Yes".

I'd like to note as of 11/01/23 the Village of New Miami does have a police department. Furthermore, a Lieutenant at the neighboring jurisdiction should know this basic information. So this was either a flat out lie to deceive me, or an immense lack knowledge and training by a ranking officer in Hamilton Police Department.

In my final conversation with with Lt. Taylor on 09/25/23. Lt. Taylor told me he watched the video and could find no wrong doing with the officer or his actions. He also provided the name of the unknown officer as Officer Leisinger,  Hamilton Municipal Police Department,  as seen on the dash camera so I could now request this officers body camera as well.

I also inquired if Sgt. Thacker had his BWC activated when I met with him on 09/22/23. Because I would be requesting that footage as well. I did bet the lieutenant that both the sergeant and Officer Liesinger did not have their BWC activated at the time of interactions with myself or at the incident. I'm very happy to say I lost this bet and it appears both the sergeant and Officer Liesinger did have their BWC activated. Because now Officer Liesingers BWC has become evidence also, and all because I asked to view his BWC footage.

This is very odd because no one would have known Officer Liesinger was at the scene of the incident unless I had pointed that out for everyone. It was abundantly clear Lt. Taylor didn't know he was on scene at the incident. I then pointed out clear common sense discrepancies on what the officer documented happened and what you could clearly see happening on the just the dash camera footage I was provided.

Lt. Taylor continued to justify the officers actions in this phone call. I could not understand what Lt. Taylor saw in watching the video on or about 09/14/23 and then again on or about 09/25/23 that changed his views so drastically. Other than my questioning the actions of the Hamilton Police Department.

During this final conversation on 09/25/23. I specifically asked Lt. Taylor the following questions about the dash camera footage he provided me of the incident.  As to why he now found no wrong doing in the Officer action or conduct.

You don't think going 70MPH in a 35MPH zone in the middle of the day on NW Washington Blvd by a school to catch up to a car for a minor traffic infraction isn't excessive? Or was the officer a in pursuit? Lt. Taylor then asked me if I could see that on the dash camera he provided me. I told him yes. He then exhaled as if he was stunned I had seen this.

I then asked Lt. Taylor how the officer could see one of violations the officer had cited as seeing leading to an arrested. If the officers head was on a swivel, backing out of driveway, with a car clearly approaching his cruiser. Pointing out to Lt. Taylor if your head is moving back and forth on a swivel you can not see a violation momentary

violation occur such a some stop at a stop sign. With the lack of experience in the officer, which Lt. Taylor had previously communicated, I found this very doubtful. However, Lt. Taylor told it could happen.

Lt. Taylor also told, me in this phone conversation, it was possible to the Identity the license plate of the approaching car accurately as articulated in the officers report.  I then pointed out as you clearly see the in video vehicle has no front license plate for the officer to identify.

Lt. Taylor assured me while the officers head was on a swivel, backing out of a drive, making sure the car approaching his backing vehicle was stoping as to hit him while backing as any normal human being would do. The officer was still able to view the license plate clearly by the rear plate, and see very vividly the car fail to stop for the stop sign. Which they were not cited in this incident leading to their arrest, due to "officer discretion." From my own person knowledge and experience as a law enforcement officer. Who has preformed this same maneuver thousands of times  I knew this answer was clear absurdity.

Then I asked the lieutenant if he completed a FTC incident report due to the Pursuit Policy of the Hamilton Police Department (which I found by researching the internet due to not being provided a copy of the policy and general orders like I requested on 09/11/23 and being generally interested in the facts of this matter) clearly states must be completed in all pursuit and FTC incidents. This was a FTC so I asked.

Lt. Taylor told me he didn't have to fill out that document. I asked again about the policy and reiterated it specifically says in all pursuits and FTC incidents a supervisor must fill out this report. Lt. Taylor told me that a FTC report is only completed when the driver gets away and this incident ended with an arrest.  Therefore, no documentation was needed  by a supervisor.

I'd clearly like to apply this same logic to an officer who has a use of force in arresting an offender: The supervisor does not have to do a use of force report because the use of force incident ended with a persons arrest. Using this logic the only time a use of force report needs to documented. Is when the officer used forced on someone, in the course of an arrest, and the person evades the officer and runs away. Only then a use force of force report would be done because force was used on a person and the person evaded arrest.

I would think any pursuit or FTC incident as the policy clearly states would be documented by the shift supervisor. As a pursuit or FTC incident both cause officers to use some form of excessive action.

I then informed Lt. Taylor this was a policy issue apparently not being clear and that should be addressed. I informed Lt. Taylor I was going to request that information as well to show it was not documented. Lt. Taylor clearly did not like this. By his his jovial smug tone during the call.

Lt. Taylor was then asked if the officer cited the citizen for two stop bar violations, a window tint, and arrested them for FTC. Why didn't the officer cite them for failing to stop at the first sign when he initially saw the vehicle? He saw and clearly documented this action and did include it on the charges. Lt. Taylor told me the catch all cover up phrase of police officers.  "Officer Discretion", the same answer he gave about not seeing the officer committing several stop bar violations and "rolling a stop sign"while transport the citizen to the Hamilton Police Department so they could booked into jail.

Lt. Taylor used his own "officer discretion" in these instances and saw no violations when clearly you can see them on the dash camera. I wish some of this same discretion was given to the citizen who was chased down, cited for, and ultimately arrested at gun point for committing these stop bar infractions and window tint infraction.

I informed Lt. Taylor that I did not know stop bar violations are a big problem in the City of Hamilton but I was going to find out. He then told me stop bar violation were in fact a problem in the city. Lt. Taylor then told me a stop bar and stop sign are they same violation code in the ORC. This true absolutely true and accurate information!  ORC 4511.43.

However, the general public does not know a stop bar is actual violation of law.  The general public knows to stop at a stop sign. Even the daily activity logs filled out by supervisors, including Lt. Taylor, of  the Hamilton City Police Depart. Refer to a stop sign violations as documented in their EOW summary and they not reference to as stop bar violations. Because everyone knows you have to stop at a stop sign and not everyone is aware of the actual stop bar violation.

City of Hamilton, Ohio Mail - Re: Message from "RNP002673EC6A3D"

The Lieutenant also told me the only reason it seemed like I was asking for all this information was because of some "close relationship" I have with the citizen. Implying a sexual relationship and that we seemed very close. I then told him very clearly and bluntly I would  do this for anyone I knew if I did not believe what happened to them was correct.

The Lieutenant continued and informed me I was apart of the case I was inquiring the public information about. In an effort to intimidate me. I then asked if I was going to be called as a witness in the court case about this pending matter. He then informed me I was apart of the case by asking for information about what had happened.

I asked Lt. Taylor if my public information request was sent to the Chief. He told me it was. I asked him how he became aware of my request. Lt. Taylor told me the Chief called his phone he answered the phone the Chief told him to handle my public information request. Lt. Taylor clearly communicate to me also the only reason I had received the information provided to this point was due my past experience with law enforcement.

I then expressed to Lt. Taylor that I would encourage the citizen to file a complaint also for the actions of the police department against them personally. I was then informed by Lt. Taylor I could not file a complaint on behalf of a citizen for the police action against them by the police department, however I may assist a citizen in filing a complaint against the police department.  I told him I intended to help the citizen with a formal complaint on the officer for their rights being violated as well.

Lt. Taylor then began to mockingly encourage me to make my requests. I told the lieutenant that I would make requests and I'll waste time doing it because it's my time. Lt. Taylor also asked me and I quote "You don't trust anyone do you?" I replied "No, I don't trust anyone, and that's why I read and knew the policies when I was in law enforcement." I then informed the lieutenant I was going to "Sunshine the hell out this" We then concluded the phone conversation.

I would like to note after this call on 09/25/23 it was clear a complaint on the officers under the direct supervision of Lt. Taylor were going to a complaint filed on them by the citizen after the case fully disposed of in the Hamilton Municipal Court.

I'd also like to note Sgt. Thacker was noted as "just walking in now" during the Lieutenant and mines conversation. I do not know how much Lt. Taylor's answers he over heard. However, he can attest to the Lieutenant speaking with me. Due to being asked about his BWC being activated in our meeting when I was provided the dash cam footage on 09/22/23.

On 09/26/23 Lt. Taylor sent an email to the Records Department Supervisor, Brittany Geurin explicitly stating. Not to give me anything unless it is approved by him (Lt. Taylor). Because Lt. Taylor doesn't like it when people try to go around the discovery process.

Ms. Geurin clearly understood this order given by Lt. Taylor that all information I've requested must be approved by Lt. Taylor due to all my public information requests being forwarded to Lt. Taylor for monitoring.

Ms. Geurin's chain of command is the Support Service Bureau Head, Captain Trent Chenoweth Hamilton Police Department. None of my public information request I've submitted were ever forwarded to Captain Chenoweth email for review in this mater. I do not know if Lt. Taylor had to also approve Ms. Geurin forwarding my request to Captain Chenoweth who is Ms. Geurins supervisor also, or if this was an attempt to carry out the order not to provide me with any information.

Ms. Geurin responded to the Email from Lt. Taylor that had she received the message, and had only given me a copy of the incident report. Ms. Geurin advised Lt. Taylor she had not given me the dash camera footage or any other video footage because I was going to have to get the dash cam footage by means of discovery with the court due this matter being an open case in Hamilton Municipal Court.

I would like to note, due to Ms. Geurin's response to the email sent by Lt. Taylor it appears she was unaware Sgt. Thacker had already viewed and given me a certified copy of the dash camera I had requested. Because I was clearly not supposed to have the dash camera footage already given to me.

In Lt. Taylor's reply he goes on to indicate to Ms. Geurin I'm a man on a mission in search of policy violation on the arresting officer. He continued communicating with Ms. Geurin that I "basically" knew the arrest was justified. He failed to mention in his reply email he had already provided me with information I was not supposed to have. He just took this time to criticized my actions while conveniently leaving out his own unethical and apparent criminal behavior.

I would to address Lt. Taylors comment I "basically" knew the incident was "justified". I never "basically" or any other way communicated the officers actions were "justified" or anything else about this entire situation is "basically justified" on behalf of the City of Hamilton at all. This shows Lt. Taylor contradicting himself. If I "basically" new this situation was justified. Why would I want to be " a man on a mission" to find a policy violation? Unless Lt. Taylor is implementing my actions are disingenuous.

Lt. Taylor actually commented in the phone conversation on 09/14/23. He could tell I had a passion for finding the facts of this matter. The conversations I've had with employees at the Hamilton Police and Hamilton City Council have been documented, recorded, and logged on my behalf.

This email is the only document the city of Hamilton Police Department has about any phone conversation pertaining to my Public Information request as of 10/03/23 I know that because I've requested all documentation and voice recordings in reference to this matter. Unless you have failed to produce me with these documents after acknowledging they do not exist.

These comments made by Lt. Taylor are very assumptive, unbecoming, and do not coincide with my comments in reference to actually enjoying reading these materials and learning more in Lt. Taylor and I first phone conversations before I began questioning the Hamilton Police Departments actions.

This email chain, between Lt. Taylor and Ms. Geurin, explains by itself why I was asked serval times which specific policy I wished to view after I had requested to see all of them. I was also asked multiple times by the Records Department if I could describe what policy I was looking for so they could just provide those specific policy's and not all of the policies which I'd ask to view.

This email chain also explains very clearly I was not supposed to have a have a copy of the dash camera footage provided to be by the City of Hamilton Police Department by Sgt. Thacker, acting on behalf of Lt. Taylor, acting on behalf of the Chief of Police.

Lt. Taylor didn't acknowledge in his response he had already provided me with this video in an apparent open pending criminal case in the Hamilton Municipal. Rather mocked me, my intelligence, my right to view public information, and right to oversee the police department as a private citizen. This document was provided to me on 10/27/23.

While the City of Hamilton Police Department was ensuring I was not provided any information on 09/26/23. I contacted Hamilton City Clerk Dainiel Tidyman. I asked Mr. Tidyman if a copy of my Public Information Request was forwarded to his office for monitoring by the the Chief of police who was clearly aware of my request as explained previously in this statement. Mr. Tidyman stated he new nothing about my Pubic Information Request and it had not been sent to his office by the Chief of Police. I then asked Mr. Tidyman if this was a violation of the City Policy that Public Information Request be forwarded to City Clerks Office for monitoring if the request cannot be filled within 5 days. He did not answer the question.

I asked Mr. Tidyman if he could document in an email our phone conversation and that it was 09/25/23 and his office was completely unaware of the Public Information Request I placed on 09/11/23. An email documenting a complete summary of the call was sent to Mr. Tidyman on my behalf. This was due to not receiving an email Mr. Tidyman was sending me in reference to our conversation and I wanted the conversation fully documented for Mr. Tidyman. Mr. Tidyman did received the email and did not have any questions or corrections as to what we had talked about. If you would like I can provide you all email chains with the City Of Hamilton I have sent and received.

As a result of Mr. Tidyman's proper oversight the next day on 09/27/23 I was provided some of the information on my first Public Information Request. This information was placed on a Google drive account. Ms. Geurin told me these are used for large information request and with me living so far away it would be better to view documents in this media form and was also cheaper. Ms. Geurin told me I would receive a link with the information. It was during this conversation about the set up on my google drive account. Ms. Geurin was asked directly if my request went to the

chief as she had previously implied. Ms. Geurin again advised the Chief was aware of my Public Information Request.

In the email received, I also provided a reason for denial of some of my request in red. It was indicated that I was not provided a copy of the dash cam footage due to that video being evidence in ongoing case pending in the Hamilton Municipal Court in my request placed on 09/11/23. It was obvious Ms. Geurin had not known Lt. Taylor had already provided me this evidence in an ongoing case pending in the Hamilton Municipal Court.

This information was updated in an email received on 09/29/23 which stated I could not have the video of the dash camera footage due it being used in an open pending case in the Hamilton Municipal Court and I would have to obtain this information by discovery with court. However, it was provided for viewing and a copy certified of this was given to me on 09/22/23.

This email received on 09/29/23 in regards to my second Public Information Request contained the denial of Officer Liesingers BWC footage also. I'd like to point out again no one knew or was it documented Officer Liesinger was at the incident until I pointed this out. Even Lt. Taylor did not know he was there. However, after I request Officer Liesinger BWC it becomes evidence in an ongoing case pending in the Hamilton Municipal Court.

It's clear an order was placed not to give me anything. To investigate the actions of the Hamilton Police Department. Even after giving me the dash camera in an ongoing pending criminal case in the Hamilton Municipal Court. So I fully understand why I have been denied this information as of 10/27/23.

It's a shame that we will know if anyone else had requested the information from Officer Liesinger if it would have given to them. There would have been no indication it was information in a pending case, so I guess this would been ok for someone else. However, since I specifically asked for this it's information it was denied as part of an order not to give me anything. This order came from Lt. Taylor who's the supervisor of the officers whose actions were being question by citizen only wanting to see the truth of the events, and not Ms. Geurin's supervisor Captain Chenoweth. This very unethical.

In spite of all this resistance by the Hamilton Police Department I continued to place request for information and attempted to communicate in an effective manner. Due to delays in information being received other information was not available upon follow up Information Request such as Loby and Holding area Cameras.

Most information received was only after contacting Mr. Tidyman to ensure his oversite. However, since Lt. Taylor was copied on each email and Lt. Taylor's view of allowing me to view any information is very distorted. It's hard to determine exactly who was overseeing whom.

I felt my only recourse was to report this issue and file a formal complaint. Since, the Chief knew about my Public Information Request, did not forward the request to the proper oversight as the policy clearly states, and also oversaw the incident where I was giving evidence in an ongoing criminal investigation according to his own department.

I know either my rights or the citizens rights have been terribly violated now . As I was apparently supplied with evidence in a citizens case which as 11/01/22 is still pending in Hamilton Municipal Court. Along with the outrageous actions of the members of the Hamilton Police Department. I felt a need to report these matters.

Therefore, on 10/20/23 I contacted Scott Scrimizzi Executive Director of Public Safety for the city of Hamilton by phone. I began to tell Mr. Scrimizzi about the facts of the matter with my Public Information Request. As soon as I told him the Chief was made aware of my Public Information Request and did not forward that request to the City Clerk so it may be monitored. Mr. Scrimizzi became very loud and continually interrupted me while I was speaking. Mr. Scrimizzi asked me if I had ever talked to the Chief. I told him no however I knew the chief received my request and did not forward that to the city clerk for monitoring. I then began trying to explain what had transpired. Mr. Scrimizzi told me he was the Chief of police in Hamilton and that's not how things work. Mr. Scrimizzi flat out refused to believe me about the chiefs actions. Mr. Scrimizzi told me my problem was with the officer and to contact Captain Trent Chenoweth, Hamilton Police Department. I then asked how a Captain investigates the Chief and the reason I contacted Mr. Scrimizzi was due to him being chiefs supervisor. Mr. Scrimizzi told me Captain Chenoweth would handle the matter. He encouraged me not to talk to Captain Chenoweth or the Chief to ask them questions directly. He then provided me the incorrect email address to Captain Chenoweth. After using a few profane words towards Mr. Scrimizzi on how I could not believe he was refusing to listen to or document a complaint on the Hamilton Police

Department or the chief of police. Being the chief of police's superior. It was obvious I couldn't do anything but contact Captain Chenoweth. To the investigate the Police and Chief. Which sounds very wrong all in of self an I still don't understand how this is possible.

After speaking with Mr. Scrimizzi he brought up a valid point of me not actually speaking to the chief directly. I was able to leave a message for the Chief in spite of a disabling anxiety disorder witch was mentioned to the City Clerk and the Records Department of my phobia of leaving messages on machines. I offered to provide this documentation by my doctor treating me for this disorder to the records department and they did not wish to see them in the reply to my email. This was after the records office judged and chastised me for apparently making "several calls" in which I only spoke with two people on two occasions in the records department that week. This can all be viewed in the emails I have exchanged with the City of Hamilton. It can also be viewed how I believe my phone calls to the non emergency number of the Hamilton Police were ignored on purpose as a means of avoiding me. This concern was mentioned and documented by Mr. Tidyman in a email I asked him to generate regarding my records request on 09/26/23.

Finally on 10/26/23 I received a phone call from the Chief of Police of the Hamilton Police Department. I then asked the Chief if he was made aware of my Public Information Request and covered my phone conversation with Mr. Scrimizzi. The Chief told me he was in fact made aware of my Public Information request. I then asked him if when we hung up if he could call Mr. Scrimizzi, because I didn't care if Mr. Scrimizzi thought I was an asshole. I just didn't want him to think I was a lier too. I told the chief I was impressed with his testicular fortitude for returning my call because I didn't think he would. The Chief made me aware that Captain Chenoweth had received my email and would be contacting me in reference to filing a formal complaint. I then apologize to the Chief that it had to come to filing a complaint.

On 10/30/23 I finalize planes via email to meet Captain Chenoweth at the Hamilton Police Department to file my formal complaint with the Hamilton Police Department on 11/01/23.

I will provide you the following information if it would help in your investigation of the matter. All emails I have and chains from me to members of employees of the City of Hamilton Councils office, Hamilton Police Officers, and Members of the Records Department. I believe you have these items  but I actually want to be transparent with you as you have clearly not been with me.
I will provide you with a copy from my medical doctors  record to as my to disability if you require proof of that also.

I do not believe the actions of the Hamilton Police Department as an entire department are moral, ethical, or correct. I also, do not believe the actions and representatives of the City of Hamilton are ethical, moral, and correct. Including the Hamilton Police Department Investigating the Hamilton Police Department with no oversight. This belief is based on the actions listed in the facts above in this complaint.

Therefore I will be forwarding a copy of this complaint to CALEA for their oversight of the matter concerning one of their accredited police departments for oversight and also the Department of Justice for their oversight in the matter concerning this formal complaint with Hamilton Police Department in regards to issues surrounding my Public Information Request an Civil Rights violation of a citizen in a pending ongoing criminal matter in the Hamilton Municipal Court. I will fully cooperate with CALEA and the Department of Justice. I realize they may not have the policy information I'm referencing to in this complaint, however I will provide them documentation to both CALEA and the Department Justice as far records, recordings, and other documentation in my possession.

The following are the documents believe apply to the violation and support the facts I've presented lodged in this complaint.

1. Administrative Director No. 333-11-18-16
   Section 3a, 3b, 3c, 3e,3f
2. General Order# RR-1.1
   1.1.1(1), 1.1.2, 1.1.3, 1.1.4(2(1,2), 3, 4(1(1,2),
   2,3), 1.1.5(1,2,3,4)
3. General Order# RR-2.1
   Section 2.1.1 ( #3/4/5/6/7), 2.1.2, 2.1.4,
   2.1.6, 2.1.7, 2.1.8, 2.1.11, 2.1.12
4. General Order# RR-3.1
   Section 3.1.1, 3.1.3, 3.1.4, 3.1.5, 3.1.6
   ( #1,2,4,7,14,)

5.General Order# RR-4.1
   Section 4.1.1 (1-5), 4.1.3 (2,3,5,6) 4.1.4
   4.1.5, 4.1.6, 4.1.8, 4.1.9, 4.1.10, 4.1.11,
   4.1.12, 4.1.13, 4.1.14 (3), 4.1.15
   4.1.15(4(1-2),5(1-5)
6.General Order# RR-5.1
   Section 5.1.1, 5.1.2, 5.1.3, 5.1.4, 5.1.7
   5.1.12(1(3), 5.1.13, 5.1.20, 5.1.21,
   5.1.24(2,3,4,5,6,10), 5.1.26(1(1)
   1,2,34), 2, 3, 6, 7, 9, 10,12),
7.General Order# RR-5.3
   5.3.2, 5.3.4(1,3,5), 5.3.7(1-3),
   5.3.9(1(1-2),2), 5.3.10(1),5.3.13
8.Hamilton Police Department Mission
   Statement
9.Lt. Taylor's email chain with Brittany
   Geurin on 09/26/23
10.Hamilton Journal-News article by Lauren
   Pack date January 20, 2022 titled
   "Chief: Hamilton police officer
   terminated for sexual activity while on
   duty" this news article references an
   Officer terminated for fornicating while
   on duty in which an video was circulated
   around the the department documenting
   the fact. While I'm sure both parties
   consented to this act
   where aware of the video,
   and it being circulated. This act was so
   heinous the officer was terminated. The
   Chief is quoted in the article as;
"The community places their trust in us and when a member of our organization purposely violates that trust the
consequences are swift and severe. While I am deeply disappointed and disturbed by this incident, I am incredibly
proud of the officers who discovered and reported this misconduct and our investigators who moved quickly to
develop information that allowed me to act decisively," Bucheit said."
   I would hope the Hamilton Police
   Department would measure this
   issue with the same scrutiny as it clearly
   judges other officer, violator's, and
   citizens just attempting to get Public
   Information. This article is public record
   and can be found in the internet.

   1. Copy of the Sunshine Law, this is public record also found on the internet
   2. ORC Section 149.43, again public record
   3. United States Constitution, public record.
   4. General Order# TE 2.6
   5. ADA website regarding persons with disabilities, public record
   6. NIH website regarding persons with disabilities, public record

I would asked that email is acknowledged by the Hamilton Police Department as received with a date and time
stamp. I apologize for not meeting with Captain Chenoweth is person as I had planned in my emails. After completing
documenting these instances I do not feel either welcome or safe visiting the Hamilton Police Department in person
at this time. This is due to the treatment and actions of the persons employed there and fear of retaliation in against
my family or myself by the City by the Hamilton Police Department due to documenting and reporting these actions.

All statements I have made in this formal complaint are true and accurate to the best of my recollection,
documentation, recordings available on 11/01/23.

Jeff Pyfrin

Sent from my iPhone

On Oct 30, 2023, at 1:08 PM, Trent Chenoweth <trent.chenoweth@hamilton-oh.gov> wrote:

I will be here on that date.

Trent

On Mon, Oct 30, 2023 at 1:20 AM Jeff Pyfrin <jpyfrin@hotmail.com> wrote:
Trent,

Thank you for providing this information. I will be in Hamilton on 11/01/23 and didn't know if I would be able to deliver a copy of my formal complaint and documents personally to you as I would like a time stamped copy as proof you have received all of of my documentation.

If this is an unreasonable request I could always request the lobby camera as part of a Public Information Request or capture the event on with my cellular phone.

Thank you,
Jeff Pyfrin

Sent from my iPhone

On Oct 26, 2023, at 2:41 PM, Trent Chenoweth <trent.chenoweth@hamilton-oh.gov> wrote:

Jeff,

I have attached our complaint form for your review. You can fill it out and attach any supporting information when you drop it off.

Thanks,

Capt. Chenoweth

---------- Forwarded message ---------
From: <chiefsoffice@hamilton-oh.gov>
Date: Thu, Oct 26, 2023 at 2:36 PM
Subject: Message from "RNP002673EC6A3D"
To: Trent Chenoweth <trent.chenoweth@hamilton-oh.gov>

This E-mail was sent from "RNP002673EC6A3D" (MP C307).

Scan Date: 10.26.2023 14:48:48 (-0400)
Queries to: chiefsoffice@hamilton-oh.gov

--

**Captain Trent C. Chenoweth, MBA, CLEE**

Hamilton Police Department

Support Services Bureau Commander

331 S. Front Street

Hamilton, Ohio 45011

Office 513-868-5811 ext. 1561

Fax 513-867-7317



<20231026144848659.pdf>

--

**Captain Trent C. Chenoweth, MBA, CLEE**

Hamilton Police Department

Support Services Bureau Commander

331 S. Front Street

Hamilton, Ohio 45011

Office 513-868-5811 ext. 1561

Fax 513-867-7317



--

**Captain Trent C. Chenoweth, MBA, CLEE**

Hamilton Police Department

Support Services Bureau Commander

331 S. Front Street

Hamilton, Ohio 45011

Office 513-868-5811 ext. 1561

Fax 513-867-7317





Trent Chenoweth <trent.chenoweth@hamilton-oh.gov>

---

## Re: Message from "RNP002673EC6A3D"
1 message

---

**Trent Chenoweth** <trent.chenoweth@hamilton-oh.gov>                    Wed, Nov 1, 2023 at 1:52 PM
To: Jeff Pyfrin <jpyfrin@hotmail.com>

Jeff,

I received your complaint.

Thanks,

Capt. Chenoweth

On Wed, Nov 1, 2023 at 1:13 PM Jeff Pyfrin <jpyfrin@hotmail.com> wrote:

# I would like to file a formal complaint on the City of Hamilton Police Department, the Chief of Police, Lieutenant Eric Taylor, Sergeant Mike Thacker, Brittnay Geurin Records Supervisor and Scott Scrimizzi Executive Director of Public Safety for their personal involvement and actions in the following incident concerning Public Information Rights, Civil Rights, and several violations of policy of the Hamilton Police Department. Attached is a list of the policies and procedures I feel were violated by the police department, its employees, and city employee. Also, supporting documents for the validity of my complaint. As well as an article published by the Journal-News on 01/20/22 by Lauren Pack.

On 09/11/23 I entered the City of Hamilton Police Department, during regular operating business hours, in order to file a Public Information Request. I was initially informed at the records information window that this needed to be done online in an email. I informed the employee I had came to the police department in person to file my request. I was then asked if I had the information I wanted written down and after I informed the employee it was written down. I was instructed to take a seat and wait. After being called to the window the employee asked me for the information I wanted. I then began to recite the information I had written down on my cellular phone to request. The employee informed me again I had to write down my request on paper. The employee was then informed I was not writing anything down. Then the employee began writing down my request as I recited them to her.

Case: 1:25-cv-00347-MWM-SKB Doc #: 1-1 Filed: 05/23/25 Page: 29 of 50 PAGEID #: 36

Once I asked for dash camera and body camera footage again it was insisted that I fill out paperwork to be able to view this information. Again, I informed the employee I was not filling out anything, asked if she wanted to see the City of Hamilton Policy on the matter, and asked to speak to her supervisor. At this time the employee turned her back to me, she threw her hands in the air, and stated " I'm not doing this today". I assume she went to find the supervisor. Once the supervisor was informed of what had happened she informed me I did not have to fill out any paperwork. I then asked if I would be finishing my request with her or the employee who was clearly agitated. The supervisor informed me I could continue my request with the clearly agitated employee.

This employee asked me to stop yelling several times and informed her I was not yelling, but rather it was difficult for me to hear her and I wanted to make sure she was understanding and hearing me due to my difficulty in hearing her through the glass, small window hole, and small paper slide at the bottom of the window. The only person causing any attention was the clearly agitated employee taking my request. After all my items were communicated the employee repeated them to me and they were correct. I left a contact number to be reached when the records were ready. I also asked if I needed to leave a deposit for any records. I asked if she may know how long it would take to obtain my records requested. This employee told me it would take a while due to some of the records request having to go to a different location in order to be obtained and redacted. Such as personnel files and prior disciplinary records. She informed me the rest in my information could be ready by the following week. She then recanted this statement and told me she did not know when my request would be ready. I then thanked her for her time and left the police station. The only information I was provided was an incident report with no statement of facts listed nothing else in my request for viewing was allowed to me this day.

The following day on 09/12/23 I received a message to contact Lt. Taylor of the City of Hamilton Police Department. Upon returning Lt. Taylor's phone call. He informed me he received my records request and anytime there is a records request of my length and nature it gets forwarded to the chief due to having concerns it may be media related. I then informed Lt. Taylor I was not the media and he did not have worry about that, however I was disabled former law enforcement officer.

I was able to communicate my concerns of what I had heard about an incident occurring at the Hamilton Police Department. I informed Lt. Taylor I wanted to see what had happened due to concern the shared with me being so unbelievable due to my past of being a Law Enforcement Officer.

Lt. Taylor told me this information seemed odd to him as well. Lt. Taylor told me he was going to look into the matter and get back with me in regards to my concern. I also asked about the information I had inquired about and was told it was being worked on and would take time. I thanked him and stating again I just wanted the information to be able to see what happened. I also informed Lt. Taylor during this conversation that once I had seen all the information I requested I hoped I could say the officer did an outstanding job. Lt. Taylor was also told in this conversation. The issues between the officer and citizen could be handled in court. I just wanted to see the information. I reiterated to Lt. Taylor during this conversation. I had hoped once I see all the information I could I say the Hamilton Police Department did a great job. He then thanked me and told he hoped so as well.

Upon a follow up phone call placed by Lt. Taylor on 09/14/23. When I returned Lt. Taylor's phone call. He had informed me he had watched the dash camera footage which I had request and the circumstances leading to incident. During this phone conversation Lt. Taylor informed me this incident would have gone much differently if he was the officer involved in the incident.

Lt. Taylor told me the difference in the incident happening the way it did, and the incident not happening was the difference between an officer with 24 years experience as opposed to an officer with 2 years of experience. Insinuating the lack of experience and knowledge of the officer which lead to the incident, and someone with more experienced and training would know to use more common sense and much better judgment.

I explained to Lt. Taylor I could understand the difference in a more tenured experience officer of 24 years like Lt. Taylor and an officer who has only been with department for 2 years. I informed Lt. Taylor again they could talk about legal issues in court again and that I just wanted to talk about policies and see the information I had requested. I reiterated this point several times in our conversations.

I even told Lt. Taylor, I myself I would "profile" the vehicle in the incident and anyone with any sense would. We then had a conversation on how police can not say "profiling" anymore. Lt. Taylor told me it was now called "behavioral profiling" and the Hamilton Police Department conducts this practice in law enforcement all the time, that's its good policing, and that he encourages officers to practice this as a means of good police work. I then told him whatever it's it's called now it's still "profiling" and I was surprised it was aloud now in police work.

Lt. Taylor was informed there was no doubt both the officer and individual were both wrong on the day incident took place. However, the officer has been trained and the citizen he dealt with was not trained. Therefore, the officer should have known better making the officer "more wrong due to being trained". I asked if I could have a copy of the dash camera footage and body camera footage so I may see it for myself. I told Lt. Taylor I was sure I could view it through discovery with the court, so whether I viewed the footage sooner or later I was going to see the footage requested.

Lt. Taylor said he would allow me to see dash camera footage due to my past experience with law enforcement. I informed Lt. Taylor I would be in Hamilton on 09/22/23 and I could meet him on that date. Lt. Taylor told me he was off that day and he would inform Sgt. Thacker of the City of Hamilton Police Department of the incident because he could be trusted and I could meet with him. Lt. Taylor and I agreed to a 15:30HRS to meeting time with Sgt. Thacker as to not interfere with roll call or beginning of watch activities.

Lt. Taylor was also asked if I could pick up any further documents on 09/22/23. I informed Lt. Taylor I was looking forward to reading the General Orders and Policies because they were just copies and shouldn't be hard to obtain as I used to keep a binder with them in my cruiser when I was with law enforcement. I informed Lt. Taylor I was going to be unable to do anything due to an upcoming surgery and looked forwarded to reading them and learning more about the the department because I was interested in those things. Lt. Taylor said he would do all he could for me and have any further documentation available to me on 09/22/23 when I met with Sgt. Thacker.

When I met with Sgt. Thacker to view the dash camera footage on 09/22/23 at the City of Hamilton Police Department. I was taken to the formal meeting room to view the tape on the projection monitor. Sgt. Thacker explained the readout in the dash camera screen and informed him I was an ex law enforcement officer and knew how the read the screen. While watching the screen I asked about there being no sound along with dash camera footage we were watching. Sgt. Thacker told me the microphone inside the car does not automatically come on when the light bar is activated and he did not understand why the sound was not working either. Sgt. Thacker did appear to try and fix the issue with the equipment. However, when the officer excited his vehicle you could hear his commands on the microphone on the dash camera.

I would like to note. The sound for the dash camera footage did not work on my personal computer either. However, in the copies of this footage I've made and given to others. They all say the sound works on their copies, so it's hard to determine exactly where the error lie in this.

While watching the video with Sgt. Thacker I found the footage of the officers investigation and subsequent arrest to be so unsettling, atrocious, and egregious. After the person was placed in handcuffs I told Sgt. Thacker I could watch the rest camera footage at my house.

I also informed Sgt. Thacker the incident could have gone differently and he obviously disagreed.Finding no wrongdoing as to what was seen in the dash camera up to the point I requested him to stop playing the footage. I did not know if this disagreement was due to Sgt.Thacker's lack of experience also or his overbearing, dominant, and pious attitude he demonstrated during our meeting.

Due to my previous conversation with Lt. Taylor in reference to the inexperience of officers at the Hamilton Policed Department. I could clearly see and understand by watching the video. The officer in the dash camera clearly lacked knowledge, experience, training, and I'm actually shocked he still has a job with the City of Hamilton due to being a liability for the department. I'm very certain if I would have performed as this officer conducted himself and it was brought to the attention of my supervisor I would have been fired regardless if it was my second year or my twenty fourth year with the department. However, my issue is with the Public Information Request I've requested.

I informed Sgt. Thacker during this meeting, as I did with Lt. Taylor, that I did not want to talk about the law the citizen could argue the facts in court. I just wanted to talk about the policies and procedures of the department regarding this officers conduct.

I did ask Sgt. Thacker if the officer was found to have violated any policies would if he would be held to the same standards he measured the citizen to that day. Sgt. Thacker agreed with me that if the officer was found to violate any policy he would be held to the same standards as he measured unto the citizen.

Sgt. Thacker then provided the dash cam video, arrest report with complete narrative, and the booking report in a file for me to take with me. I asked again about the policy and general orders as Lt. Taylor and I had discussed on 09/14/23. I was informed by Sgt.Thacker that was all the information given to him by Lt. Taylor. I thanked him for his time, offered to pay the cost of the CD as is the policy of the City of Hamilton for digital information. Sgt. Thacker declined, and I told him I would follow up with Lt. Taylor when he returned to work. Sgt. Thacker's BWC footage is available for this. You can clearly see and hear what transpired.

I would like to note I requested this BWC footage as part of a Public Information request. You can clearly see the video Sgt. Thacker is watching on the computer is the same video I'm watching on the projector. I would further like to note the Hamilton Police Department Records Department censored the viewing of the dash camera playing on the computer while Sgt. Thacker and I were watching it on the projector. In order for me not the view the information I was clearly watching and was provided a certified copy. I was confuse as why this happened and came to logical conclusion either my rights or the citizens who was arrested were clearly violated. However, at this point I wasn't sure.

When Lt. Taylor return from days off on 09/24/23. I had the chance to discuss several discrepancies in the officers report and what exactly happened on the dash camera footage. One of which was an officer who was on scene and not listed in the report or any documentation of the incident.

I asked Lt. Taylor if he might know who the officer may be. I described the individual and Lt. Taylor asked me if the person had a beard or was clean shaven. I told him I could not remember but he his clearly on the dash camera footage I was provided. I then asked if the Officer was a New Miami Officer as I would have be in contact with the Village of New Miami for information.

Lt. Taylor advised me he was unaware if New Miami still had Police Officers. I found this odd at the time because I had not heard of New Miami Police Department disbanding. However, I had no reason why Lt. Taylor wouldn't know if the village of New Miami had Police Officers as it is a neighboring jurisdiction.

However, Lt. Taylor told me he did not know who it was I was describing and had he had to view the dash camera footage to find out. This is odd due to Lt. Taylor telling me he watched the video on or about 09/14/23. I'm sure he would been able identify one of his officer in camera footage if he would have seen him. It was very obvious if you watched the dash camera footage.

I told him I would appreciate him letting me who the officer was,  because I was going to be making a Public Information request for the unknown officers BWC. In order to see exactly what happened. This was due to the statement of facts not matching the the horrific events seen on the dash camera footage, and lack of information documented or articulated by the arresting officer.

However, knowing BWC are supposed to be on and recording while on a call in public. I was hoping this unknown officers BWC might provide further insite on what took place during the incident. Lt. Taylor assured that one I had "seen everything" I would totally understand the events which took place in this incident during this phone conversation also.

I would like to note due to Lt. Taylor's email thread on 09/26/23. I had not viewed or received any policy or procedures on this matter as of our conversation on 09/24/23 this was just general knowledge based on common sense.

I also had a discussion with Lt. Taylor, during this conversation, about the officer clearly committing the same traffic offenses he cited the citizen for leading to their arrest. I used the following analogy:

If I pull someone over for drinking a beer while they're driving. I wouldn't arrest the driver, put them in my back seat of my cruiser, then on the way to jail crack open a beer in the front seat, and drink it on the way to jail with them in back seat.

I explained to Lt. Taylor this was an extreme analogy, however he understood the meaning of the antidote. Lt. Taylor told me he would watch the tape again and see who the officer was because he did not know and then contact me the following day (09/25/23.) Before ending the call I asked Lt. Taylor explicitly "Are you my contact in this matter?" Lt. Taylor stated "Yes".

I'd like to note as of 11/01/23 the Village of New Miami does have a police department. Furthermore, a Lieutenant at the neighboring jurisdiction should know this basic information. So this was either a flat out lie to deceive me, or an immense lack knowledge and training by a ranking officer in Hamilton Police Department.

In my final conversation with with Lt. Taylor on 09/25/23. Lt. Taylor told me he watched the video and could find no wrong doing with the officer or his actions. He also provided the name of the unknown officer as Officer Leisinger, Hamilton Municipal Police Department, as seen on the dash camera so I could now request this officers body camera as well.

I also inquired if Sgt. Thacker had his BWC activated when I met with him on 09/22/23. Because I would be requesting that footage as well. I did bet the lieutenant that both the sergeant and Officer Liesinger did not have their BWC activated at the time of interactions with myself or at the incident. I'm very happy to say I lost this bet and it appears both the sergeant and Officer Liesinger did have their BWC activated. Because now Officer Liesingers BWC has become evidence also, and all because I asked to view his BWC footage.

This is very odd because no one would have known Officer Liesinger was at the scene of the incident unless I had pointed that out for everyone. It was abundantly clear Lt. Taylor didn't know he was on scene at the incident. I then pointed out clear common sense discrepancies on what the officer documented happened and what you could clearly see happening on the just the dash camera footage I was provided.

Lt. Taylor continued to justify the officers actions in this phone call. I could not understand what Lt. Taylor saw in watching the video on or about 09/14/23 and then again on or about 09/25/23 that changed his views so drastically. Other than my questioning the actions of the Hamilton Police Department.

During this final conversation on 09/25/23. I specifically asked Lt. Taylor the following questions about the dash camera footage he provided me of the incident. As to why he now found no wrong doing in the Officer action or conduct.

You don't think going 70MPH in a 35MPH zone in the middle of the day on NW Washington Blvd by a school to catch up to a car for a minor traffic infraction isn't excessive? Or was the officer a in pursuit? Lt. Taylor then asked me if I could see that on the dash camera he provided me. I told him yes. He then exhaled as if he was stunned I had seen this.

I then asked Lt. Taylor how the officer could see one of violations the officer had cited as seeing leading to an arrested. If the officers head was on a swivel, backing out of driveway, with a car clearly approaching his cruiser. Pointing out to Lt. Taylor if your head is moving back and forth on a swivel you can not see a violation momentary violation occur such a some stop at a stop sign. With the lack of experience in the officer, which Lt. Taylor had previously communicated, I found this very doubtful. However, Lt. Taylor told it could happen.

Lt. Taylor also told, me in this phone conversation, it was possible to the Identity the license plate of the approaching car accurately as articulated in the officers report. I then pointed out as you clearly see the in video vehicle has no front license plate for the officer to identify.

Lt. Taylor assured me while the officers head was on a swivel, backing out of a drive, making sure the car approaching his backing vehicle was stoping as to hit him while backing as any normal human being would do. The officer was still able to view the license plate clearly by the rear plate, and see very vividly the car fail to stop for the stop sign. Which they were not cited in this incident leading to their arrest, due to "officer discretion." From my own person knowledge and experience as a law enforcement officer. Who has preformed this same maneuver thousands of times  I knew this answer was clear absurdity.

Then I asked the lieutenant if he completed a FTC incident report due to the Pursuit Policy of the Hamilton Police Department (which I found by researching the internet due to not being provided a copy of the policy and general orders like I requested on 09/11/23 and being generally interested in the facts of this matter) clearly states must be completed in all pursuit and FTC incidents. This was a FTC so I asked.

Lt. Taylor told me he didn't have to fill out that document. I asked again about the policy and reiterated it specifically says in all pursuits and FTC incidents a supervisor must fill out this report. Lt. Taylor told me that a FTC report is only completed when the driver gets away and this incident ended with an arrest. Therefore, no documentation was needed by a supervisor.

I'd clearly like to apply this same logic to an officer who has a use of force in arresting an offender: The supervisor does not have to do a use of force report because the use of force incident ended with a persons arrest. Using this logic the only time a use of force report needsto documented. Is when the officer used forced on someone, in the course of an arrest, and the person evades the officer and runs away. Only then a use force of force report would be done because force was used on a person and the person evaded arrest.

I would think any pursuit or FTC incident as the policy clearly states would be documented by the shift supervisor. As a pursuit or FTC incident both cause officers to use some form of excessive action.

I then informed Lt. Taylor this was a policy issue apparently not being clear and that should be addressed. I informed Lt. Taylor I was going to request that information as well to show it was not documented. Lt. Taylor clearly did not like this. By his jovial smug tone during the call.

Lt. Taylor was then asked if the officer cited the citizen for two stop bar violations, a window tint, and arrested them for FTC. Why didn't the officer cite them for failing to stop at the first sign when he initially saw the vehicle? He saw and clearly documented this action and did include it on the charges. Lt. Taylor told me the catch all cover up phrase of police officers. "Officer Discretion", the same answer he gave about not seeing the officer committing several stop bar violations and "rolling a stop sign"while transport the citizen to the Hamilton Police Department so they could booked into jail.

Lt. Taylor used his own "officer discretion" in these instances and saw no violations when clearly you can see them on the dash camera. I wish some of this same discretion was given to the citizen who was chased down, cited for, and ultimately arrested at gun point for committing these stop bar infractions and window tint infraction.

I informed Lt. Taylor that I did not know stop bar violations are a big problem in the City of Hamilton but I was going to find out. He then told me stop bar violation were in fact a problem in the city. Lt. Taylor then told me a stop bar and stop sign are they same violation code in the ORC. This true absolutely true and accurate information! ORC 4511.43.

However, the general public does not know a stop bar is actual violation of law. The general public knows to stop at a stop sign. Even the daily activity logs filled out by supervisors, including Lt. Taylor, of the Hamilton City Police Depart. Refer to a stop sign violations as documented in their EOW summary and they not reference to as stop bar violations. Because everyone knows you have to stop at a stop sign and not everyone is aware of the actual stop bar violation.

The Lieutenant also told me the only reason it seemed like I was asking for all this information was because of some "close relationship" I have with the citizen. Implying a sexual relationship and that we seemed very close. I then told him very clearly and bluntly I would do this for anyone I knew if I did not believe what happened to them was correct.

The Lieutenant continued and informed me I was apart of the case I was inquiring the public information about. In an effort to intimidate me. I then asked if I was going to be called as a witness in the court case about this pending matter. He then informed me I was apart of the case by asking for information about what had happened.

I asked Lt. Taylor if my public information request was sent to the Chief. He told me it was. I asked him how he became aware of my request. Lt. Taylor told me the Chief called his phone he answered the phone the Chief told him to handle my public information request. Lt. Taylor clearly communicate to me also the only reason I had received the information provided to this point was due my past experience with law enforcement.

I then expressed to Lt. Taylor that I would encourage the citizen to file a complaint also for the actions of the police department against them personally. I was then informed by Lt. Taylor I could not file a complaint on behalf of a citizen for the police action against them by the police department, however I may assist a citizen in filing a complaint against the police department. I told him I intended to help the citizen with a formal complaint on the officer for their rights being violated as well.

Lt. Taylor then began to mockingly encourage me to make my requests. I told the lieutenant that I would make requests and I'll waste time doing it because it's my time. Lt. Taylor also asked me and I quote "You don't trust anyone do you?" I replied "No, I don't trust anyone, and that's why I read and knew the policies when I was in law enforcement." I then informed the lieutenant I was going to "Sunshine the hell out this" We then concluded the phone conversation.

I would like to note after this call on 09/25/23 it was clear a complaint on the officers under the direct supervision of Lt. Taylor were going to a complaint filed on them by the citizen after the case fully disposed in the Hamilton Municipal Court.

I'd also like to note Sgt. Thacker was noted as "just walking in now" during the Lieutenant and mines conversation. I do not know how much Lt. Taylor's answers he over heard. However, he can attest to the Lieutenant speaking with me. Due to being asked about his BWC being activated in our meeting when I was provided the dash cam footage on 09/22/23.

On 09/26/23 Lt. Taylor sent an email to the Records Department Supervisor, Brittany Geurin explicitly stating. Not to give me anything unless it is approved by him (Lt. Taylor). Because Lt. Taylor doesn't like it when people try to go around the discovery process.

Ms. Geurin clearly understood this order given by Lt. Taylor that all information I've requested must be approved by Lt. Taylor due to all my public information requests being forwarded to Lt. Taylor for monitoring.

Ms. Geurin's chain of command is the Support Service Bureau Head, Captain Trent Chenoweth Hamilton Police Department. None of my public information request I've submitted were ever forwarded to Captain Chenoweth email for review in this mater. I do not know if Lt. Taylor had to also approve Ms. Geurin forwarding my request to Captain Chenoweth who is Ms. Geurins supervisor also, or if this was an attempt to carry out the order not to provide me with any information.

Ms. Geurin responded to the Email from Lt. Taylor that had she received the message, and had only given me a copy of the incident report. Ms. Geurin advised Lt. Taylor she had not given me the dash camera footage or any other video footage because I was going to have to get the dash cam footage by means of discovery with the court due this matter being an open case in Hamilton Municipal Court.

I would like to note, due to Ms. Geurin's response to the email sent by Lt. Taylor it appears she was unaware Sgt. Thacker had already viewed and given me a certified copy of the dash camera I had requested. Because I was clearly not supposed to have the dash camera footage already given to me.

In Lt. Taylor's reply he goes on to indicate to Ms. Geurin I'm a man on a mission in search of policy violation on the arresting officer. He continued communicating with Ms. Geurin that I "basically" knew the arrest was justified. He failed to mention in his reply email he had already provided me with information I was not supposed to have. He just took this time to criticized my actions while conveniently leaving out his own unethical and apparent criminal behavior.

I would to address Lt. Taylors comment I "basically" knew the incident was "justified". I never "basically" or any other way communicated the officers actions were "justified" or anything else about this entire situation is "basically justified" on behalf of the City of Hamilton at all. This shows Lt. Taylor contradicting himself. If I "basically" new this situation was justified. Why would I want to be " a man on a mission" to find a policy violation? Unless Lt. Taylor is implementing my actions are disingenuous.

Lt. Taylor actually commented in the phone conversation on 09/14/23. He could tell I had a passion for finding the facts of this matter. The conversations I've had with employees at the Hamilton Police and Hamilton City Council have been documented, recorded, and logged on my behalf.

This email is the only document the city of Hamilton Police Department has about any phone conversation pertaining to my Public Information request as of 10/03/23 I know that because I've requested all documentation and voice recordings in reference to this matter. Unless you have failed to produce me with these documents after acknowledging they do not exist.

Case: 1:25-cv-00347-MWM-SKB Doc #: 1-1 Filed: 05/23/25 Page: 35 of 50 PAGEID #: 42

These comments made by Lt. Taylor are very assumptive, unbecoming, and do not coincide with my comments in reference to actually enjoying reading these materials and learning more in Lt. Taylor and I first phone conversations before I began questioning the Hamilton Police Departments actions.

This email chain, between Lt. Taylor and Ms. Geurin, explains by itself why I was asked serval times which specific policy I wished to view after I had requested to see all of them. I was also asked multiple times by the Records Department if I could describe what policy I was looking for so they could just provide those specific policy's and not all of the policies which I'd ask to view.

This email chain also explains very clearly I was not supposed to have a have a copy of the dash camera footage provided to be by the City of Hamilton Police Department by Sgt. Thacker, acting on behalf of Lt. Taylor, acting on behalf of the Chief of Police.

Lt. Taylor didn't acknowledge in his response he had already provided me with this video in an apparent open pending criminal case in the Hamilton Municipal. Rather mocked me, my intelligence, my right to view public information, and right to oversee the police department as a private citizen. This document was provided to me on 10/27/23.

While the City of Hamilton Police Department was ensuring I was not provided any information on 09/26/23. I contacted Hamilton City Clerk Dainiel Tidyman. I asked Mr. Tidyman if a copy of my Public Information Request was forwarded to his office for monitoring by the Chief of police who was clearly aware of my request as explained previously in this statement. Mr. Tidyman stated he new nothing about my Pubic Information Request and it had not been sent to his office by the Chief of Police. I then asked Mr. Tidyman if this was a violation of the City Policy that Public Information Request be forwarded to City Clerks Office for monitoring if the request cannot be filled within 5 days. He did not answer the question.

I asked Mr. Tidyman if he could document in an email our phone conversation and that it was 09/25/23 and his office was completely unaware of the Public Information Request I placed on 09/11/23. An email documenting a complete summary of the call was sent to Mr. Tidyman on my behalf. This was due to not receiving an email Mr. Tidyman was sending me in reference to our conversation and I wanted the conversation fully documented for Mr. Tidyman. Mr. Tidyman did received the email and did not have any questions or corrections as to what we had talked about. If you would like I can provide you all email chains with the City Of Hamilton I have sent and received.

As a result of Mr. Tidyman's proper oversight the next day on 09/27/23 I was provided some of the information on my first Public Information Request. This information was placed on a Google drive account. Ms. Geurin told me these are used for large information request and with me living so far away it would be better to view documents in this media form and was also cheaper. Ms. Geurin told me I would receive a link with the information. It was during this conversation about the set up on my google drive account. Ms. Geurin was asked directly if my request went to the chief as she had previously implied. Ms. Geurin again advised the Chief was aware of my Public Information Request.

In the email received, I also provided a reason for denial of some of my request in red. It was indicated that I was not provided a copy of the dash cam footage due to that video being evidence in ongoing case pending in the Hamilton Municipal Court in my request placed on 09/11/23. It was obvious Ms. Geurin had not known Lt. Taylor had already provided me this evidence in an ongoing case pending in the Hamilton Municipal Court.

This information was updated in an email received on 09/29/23 which stated I could not have the video of the dash camera footage due it being used in an open pending case in the Hamilton Municipal Court and I would have to obtain this information by discovery with court. However, it was provided for viewing and a copy certified of this was given to me on 09/22/23.

This email received on 09/29/23 in regards to my second Public Information Request contained the denial of Officer Liesingers BWC footage also. I'd like to point out again no one knew or was it documented Officer Liesinger was at the incident until I pointed this out. Even Lt. Taylor did not know he was there. However, after I request Officer Liesinger BWC it becomes evidence in an ongoing case pending in the Hamilton Municipal Court.

It's clear an order was placed not to give me anything. To investigate the actions of the Hamilton Police Department. Even after giving me the dash camera in an ongoing pending criminal case in the Hamilton Municipal Court. So I fully

understand why I have been denied this information as of 10/27/23.

It's a shame that we will know if anyone else had requested the information from Officer Liesinger if it would have given to them. There would have been no indication it was information in a pending case, so I guess this would been ok for someone else. However, since I specifically asked for this it's information it was denied as part of an order not to give me anything. This order came from Lt. Taylor who's the supervisor of the officers whose actions were being question by citizen only wanting to see the truth of the events, and not Ms. Geurin's supervisor Captain Chenoweth. This very unethical.

In spite of all this resistance by the Hamilton Police Department I continued to place request for information and attempted to communicate in an effective manner. Due to delays in information being received other information was not available upon follow up Information Request such as Loby and Holding area Cameras.

Most information received was only after contacting Mr. Tidyman to ensure his oversite. However, since Lt. Taylor was copied on each email and Lt. Taylor's view of allowing me to view any information is very distorted. It's hard to determine exactly who was overseeing whom.

I felt my only recourse was to report this issue and file a formal complaint. Since, the Chief knew about my Public Information Request, did not forward the request to the proper oversight as the policy clearly states, and also oversaw the incident where I was giving evidence in an ongoing criminal investigation according to his own department.

I know either my rights or the citizens rights have been terribly violated now . As I was apparently supplied with evidence in a citizens case which as 11/01/22 is still pending in Hamilton Municipal Court.  Along with the outrageous actions of the members of the Hamilton Police Department. I felt a need to report these matters.

Therefore, on 10/20/23 I contacted Scott Scrimizzi Executive Director of Public Safety for the city of Hamilton by phone. I began to tell Mr. Scrimizzi about the facts of the matter with my Public Information Request. As soon as I told him the Chief was made aware of my Public Information Request and did not forward that request to the City Clerk so it may be monitored. Mr. Scrimizzi became very loud and continually interrupted me while I was speaking. Mr. Scrimizzi asked me if I had ever talked to the Chief. I told him no however I knew the chief received my request and did not forward that to the city clerk for monitoring. I then began trying to explain what had transpired. Mr. Scrimizzi told me he was the Chief of police in Hamilton and that's not how things work. Mr. Scrimizzi flat out refused to  believe me about the chiefs actions. Mr. Scrimizzi told me my problem was with the officer and to contact Captain Trent Chenoweth, Hamilton Police Department. I then asked how a Captain investigates the Chief and the reason I contacted Mr. Scrimizzi was due to him being chiefs supervisor. Mr. Scrimizzi told me Captain Chenoweth would handle the matter. He encouraged me not to talk to Captain Chenoweth or the Chief to ask them questions directly. He then provided me the incorrect email address to Captain Chenoweth. After using a few profane words towards Mr. Scrimizzi on how I could not believe he was refusing to listen to or document a complaint on the Hamilton Police Department or the chief of police. Being the chief of police's superior. It was obvious I couldn't do anything but contact Captain Chenoweth. To the investigate the Police and Chief. Which sounds very wrong all in of self an I still don't understand how this is possible.

After speaking with Mr. Scrimizzi he brought up a valid point of me not actually speaking to the chief directly.  I was able to leave a message for the Chief in spite of a disabling anxiety disorder witch was mentioned to the City Clerk and the Records Department of my phobia of leaving messages on machines. I offered to provide this documentation by my doctor treating me for this disorder to the records department and they did not wish to see them in the reply to my email. This was after the records office judged and chastised me for apparently making "several calls" in which I only spoke with two people on two occasions in the records department that week. This can all be viewed in the emails I have exchanged with the City of Hamilton.  It can also be viewed how I believe my phone calls to the non emergency number of the Hamilton Police were ignored on purpose as a means of avoiding me. This concern was mentioned and documented by Mr. Tidyman in a the email I asked him to generate regarding my records request on 09/26/23.

Finally on 10/26/23 I received a phone call from the Chief of Police of the Hamilton Police Department. I then asked the Chief if he was made aware of my Public Information Request and covered my phone conversation with Mr. Scrimizzi. The Chief told me he was in fact made aware of my Public Information request. I then asked him if when we hung up if he could call Mr. Scrimizzi, because I didn't care if Mr. Scrimizzi thought I was an asshole. I just didn't want him to think I was a lier too. I told the chief I was impressed with his testicular fortitude for returning my call because I didn't think he would. The Chief made me aware that Captain Chenoweth had received my email and

would be contacting me in reference to filing a formal complaint. I then apologize to the Chief that it had to come to filing a complaint.

On 10/30/23 I finalize planes via email to meet Captain Chenoweth at the Hamilton Police Department to file my formal complaint with the Hamilton Police Department on 11/01/23.

I will provide you the following information if it would help in your investigation of the matter. All emails I have and chains from me to members of employees of the City of Hamilton Councils office, Hamilton Police Officers, and Members of the Records Department. I believe you have these items but I actually want to be transparent with you as you have clearly not been with me.
I will provide you with a copy from my medical doctors record to as my to disability if you require proof of that also.

I do not believe the actions of the Hamilton Police Department as an entire department are moral, ethical, or correct. I also, do not believe the actions and representatives of the City of Hamilton are ethical, moral, and correct. Including the Hamilton Police Department Investigating the Hamilton Police Department with no oversight. This belief is based on the actions listed in the facts above in this complaint.

Therefore I will be forwarding a copy of this complaint to CALEA for their oversight of the matter concerning one of their accredited police departments for oversight and also the Department of Justice for their oversight in the matter concerning this formal complaint with Hamilton Police Department in regards to issues surrounding my Public Information Request an Civil Rights violation of a citizen in a pending ongoing criminal matter in the Hamilton Municipal Court. I will fully cooperate with both CALEA and the Department of Justice. I realize they may not have the policy information I'm referencing to in this complaint, however I will provide them documentation to both CALEA and the Department Justice as far records, recordings, and other documentation in my possession.

The following are the documents believe apply to the violation and support the facts I've presented lodged in this complaint.

1. Administrative Director No. 333-11-18-16
   Section 3a, 3b, 3c, 3e,3f
2. General Order# RR-1.1
   1.1.1(1), 1.1.2, 1.1.3, 1.1.4(2(1,2), 3, 4(1(1,2), 2,3), 1.1.5(1,2,3,4)
3. General Order# RR-2.1
   Section 2.1.1 ( #3/4/5/6/7), 2.1.2, 2.1.4, 2.1.6, 2.1.7, 2.1.8, 2.1.11, 2.1.12
4. General Order# RR-3.1
   Section 3.1.1, 3.1.3, 3.1.4, 3.1.5, 3.1.6 ( #1,2,4,7,14,)
5. General Order# RR-4.1
   Section 4.1.1 (1-5), 4.1.3 (2,3,5,6) 4.1.4 4.1.5, 4.1.6, 4.1.8, 4.1.9, 4.1.10, 4.1.11, 4.1.12, 4.1.13, 4.1.14 (3), 4.1.15 4.1.15(4(1-2),5(1-5)
6. General Order# RR-5.1
   Section 5.1.1, 5.1.2, 5.1.3, 5.1.4, 5.1.7 5.1.12(1(3), 5.1.13, 5.1.20, 5.1.21, 5.1.24(2,3,4,5,6,10), 5.1.26(1(1) 1,2,34), 2, 3, 6, 7, 9, 10,12),
7. General Order# RR-5.3
   5.3.2, 5.3.4(1,3,5), 5.3.7(1-3), 5.3.9(1(1-2),2), 5.3.10(1),5.3.13
8. Hamilton Police Department Mission Statement
9. Lt. Taylor's email chain with Brittany Geurin on 09/26/23
10. Hamilton Journal-News article by Lauren Pack date January 20, 2022 titled "Chief: Hamilton police officer terminated for sexual activity while on duty" this news article references an

Officer terminated for fornicating while
on duty in which an video was circulated
around the the department documenting
the fact. While I'm sure both parties
consented to this act
where aware of the video,
and it being circulated. This act was so
heinous the officer was terminated. The
Chief is quoted in the article as;

"The community places their trust in us and when a member of our organization purposely violates that trust the
consequences are swift and severe. While I am deeply disappointed and disturbed by this incident, I am incredibly
proud of the officers who discovered and reported this misconduct and our investigators who moved quickly to
develop information that allowed me to act decisively," Bucheit said."

I would hope the Hamilton Police
Department would measure this
issue with the same scrutiny as it clearly
judges other officer, violator's, and
citizens just attempting to get Public
Information. This article is public record
and can be found in the internet.

1. Copy of the Sunshine Law, this is public record also found on the internet
2. ORC Section 149.43, again public record
3. United States Constitution, public record.
4. General Order# TE 2.6
5. ADA website regarding persons with disabilities, public record
6. NIH website regarding persons with disabilities, public record


I would asked that email is acknowledged by the Hamilton Police Department as received with a date and time
stamp. I apologize for not meeting with Captain Chenoweth is person as I had planned in my emails. After completing
documenting these instances I do not feel either welcome or safe visiting the Hamilton Police Department in person
at this time. This is due to the treatment and actions of the persons employed there and fear of retaliation in against
my family or myself by  the City by the Hamilton Police Department due to documenting and reporting these actions.

All statements I have made in this formal complaint are true and accurate to the best of my recollection,
documentation, recordings available on 11/01/23.

Jeff Pyfrin

Sent from my iPhone

> On Oct 30, 2023, at 1:08 PM, Trent Chenoweth <trent.chenoweth@hamilton-oh.gov> wrote:
>
>
> I will be here on that date.
>
> Trent
>
> On Mon, Oct 30, 2023 at 1:20 AM Jeff Pyfrin <jpyfrin@hotmail.com> wrote:
>> Trent,
>>
>> Thank you for providing this information. I will be in Hamilton on 11/01/23 and didn't know if I would
>> be able to deliver a copy of my formal complaint and documents personally to you as I would like a
>> time stamped copy as proof you have received all of of my documentation.
>>
>> If this is an unreasonable request I could always request the lobby camera as part of a Public
>> Information Request or capture the event on with my cellular phone.

Thank you,
Jeff Pyfrin

Sent from my iPhone

> On Oct 26, 2023, at 2:41 PM, Trent Chenoweth <trent.chenoweth@hamilton-oh.gov> wrote:

Jeff,

I have attached our complaint form for your review. You can fill it out and attach any supporting information when you drop it off.

Thanks,

Capt. Chenoweth

---------- Forwarded message ---------
From: <chiefsoffice@hamilton-oh.gov>
Date: Thu, Oct 26, 2023 at 2:36 PM
Subject: Message from "RNP002673EC6A3D"
To: Trent Chenoweth <trent.chenoweth@hamilton-oh.gov>

This E-mail was sent from "RNP002673EC6A3D" (MP C307).

Scan Date: 10.26.2023 14:48:48 (-0400)
Queries to: chiefsoffice@hamilton-oh.gov

--

**Captain Trent C. Chenoweth, MBA, CLEE**

Hamilton Police Department

Support Services Bureau Commander

331 S. Front Street

Hamilton, Ohio 45011

Office 513-868-5811 ext. 1561

Fax 513-867-7317



<20231026144848659.pdf>

--

**Captain Trent C. Chenoweth, MBA, CLEE**

Hamilton Police Department

Support Services Bureau Commander

331 S. Front Street

Hamilton, Ohio 45011

Office 513-868-5811 ext. 1561

Fax 513-867-7317



--

**Captain Trent C. Chenoweth, MBA, CLEE**

Hamilton Police Department

Support Services Bureau Commander

331 S. Front Street

Hamilton, Ohio 45011

Office 513-868-5811 ext. 1561

Fax 513-867-7317



**Declarations of Service**

### Declaration of Service for Craig Bucheit

I, _____, declare:


1. I am over the age of 18 and not a party to this action.
2. I served the following documents:
   - Summons and Complaint for Craig Bucheit


3. I served these documents on:
   Name: Craig Bucheit
   Title/Position: _____
   Address: _____

   _____


4. Date of Service: _____
5. Time of Service: _____
6. Method of Service (check one):
   [ ] Personal delivery
   [ ] Left at usual place of abode with someone of suitable age and discretion
   [ ] Other (please specify): _____


I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 20___, at _____.


Signature: _____
Printed Name: _____
Phone Number: _____

### Declaration of Service for Trent Chenoweth

I, _____, declare:


1. I am over the age of 18 and not a party to this action.
2. I served the following documents:
   - Summons and Complaint for Trent Chenoweth


3. I served these documents on:
   Name: Trent Chenoweth
   Title/Position: _____
   Address: _____

   _____


4. Date of Service: _____
5. Time of Service: _____
6. Method of Service (check one):
   [ ] Personal delivery
   [ ] Left at usual place of abode with someone of suitable age and discretion
   [ ] Other (please specify): _____


I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 20____, at _____.


Signature: _____
Printed Name: _____
Phone Number: _____

### Declaration of Service for Lieutenant Eric Taylor

I, _____, declare:


1. I am over the age of 18 and not a party to this action.
2. I served the following documents:
   - Summons and Complaint for Lieutenant Eric Taylor

3. I served these documents on:
   Name: Lieutenant Eric Taylor
   Title/Position: _____
   Address: _____

   _____


4. Date of Service: _____
5. Time of Service: _____
6. Method of Service (check one):
   [ ] Personal delivery
   [ ] Left at usual place of abode with someone of suitable age and discretion
   [ ] Other (please specify): _____


I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 20___, at _____.


Signature: _____
Printed Name: _____
Phone Number: _____

### Declaration of Service for Brittney Geurin

I, _____, declare:


1. I am over the age of 18 and not a party to this action.
2. I served the following documents:
   - Summons and Complaint for Brittney Geurin


3. I served these documents on:
   Name: Brittney Geurin
   Title/Position: _____
   Address: _____
   _____


4. Date of Service: _____
5. Time of Service: _____
6. Method of Service (check one):
   [ ] Personal delivery
   [ ] Left at usual place of abode with someone of suitable age and discretion
   [ ] Other (please specify): _____


I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 20___, at _____.


Signature: _____
Printed Name: _____
Phone Number: _____

### Declaration of Service for Shawn Fryman

I, _____, declare:

1. I am over the age of 18 and not a party to this action.
2. I served the following documents:
   - Summons and Complaint for Shawn Fryman

3. I served these documents on:
   Name: Shawn Fryman
   Title/Position: _____
   Address: _____
   _____

4. Date of Service: _____
5. Time of Service: _____
6. Method of Service (check one):
   [ ] Personal delivery
   [ ] Left at usual place of abode with someone of suitable age and discretion
   [ ] Other (please specify): _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 20___, at _____.

Signature: _____
Printed Name: _____
Phone Number: _____

### Declaration of Service for Scott Scrimizzi

I, _____, declare:

1. I am over the age of 18 and not a party to this action.
2. I served the following documents:
   - Summons and Complaint for Scott Scrimizzi

3. I served these documents on:
   Name: Scott Scrimizzi
   Title/Position: _____
   Address: _____
   _____

4. Date of Service: _____
5. Time of Service: _____
6. Method of Service (check one):
   [ ] Personal delivery
   [ ] Left at usual place of abode with someone of suitable age and discretion
   [ ] Other (please specify): _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 20____, at _____.

Signature: _____
Printed Name: _____
Phone Number: _____

### Declaration of Service for Brian Harrison

I, _____, declare:

1. I am over the age of 18 and not a party to this action.
2. I served the following documents:
   - Summons and Complaint for Brian Harrison

3. I served these documents on:
   Name: Brian Harrison
   Title/Position: _____
   Address: _____
         _____

4. Date of Service: _____
5. Time of Service: _____
6. Method of Service (check one):
   [ ] Personal delivery
   [ ] Left at usual place of abode with someone of suitable age and discretion
   [ ] Other (please specify): _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 20____, at _____.

Signature: _____
Printed Name: _____
Phone Number: _____

### Declaration of Service for City of Hamilton

I, _____, declare:

1. I am over the age of 18 and not a party to this action.
2. I served the following documents:
   - Summons and Complaint for City of Hamilton

3. I served these documents on:
   Name: City of Hamilton
   Title/Position: _____
   Address: _____
   _____

4. Date of Service: _____
5. Time of Service: _____
6. Method of Service (check one):
   [ ] Personal delivery
   [ ] Left at usual place of abode with someone of suitable age and discretion
   [ ] Other (please specify): _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 20___, at _____.

Signature: _____
Printed Name: _____
Phone Number: _____

## Declaration of Service

I, Jeff Pyfrin, declare under penalty of perjury that I served the following document(s):

- Complaint for Damages and Injunctive Relief
- Civil Cover Sheet
- Application to Proceed In Forma Pauperis
- Summons
- Exhibit Packet (if applicable)

on the following party(ies) by:

Method of Service: [ ] Personal Delivery  [ ] Certified Mail  [ ] U.S. Mail  [ ] Other: _____

Name of Defendant(s) Served: _____

Date of Service: _____

Signature: _____

Printed Name: Jeff Pyfrin

Date: _____